UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:21-CR-00008 |
| [1] THOMAS K. WEIR ) | |
| ) | JUDGE TRAUGER |
| [3] WILLIAM L. DONALDSON ) | |
| ) | |
| [4] PAMELA SPIVEY ) | |

**UNITED STATES' CONSOLIDATED RESPONSE OPPOSING DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE ALLEGEDLY IRRELEVANT, PREJUDICIAL, AND CUMULATIVE EVIDENCE**

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorneys Sarah K. Bogni and Nani M. Gilkerson, hereby presents a consolidated response in opposition to defendants' joint motions in limine to exclude hundreds of exhibits and related evidence and testimony as not relevant, unduly prejudicial, or needlessly cumulative, including (1) a photograph of a "Tulip Buck" (DE #247), (2) 219 photographs, summary charts, and other documents alleged to be "needlessly cumulative" (DE #250), (3) all documents that pre-date the alleged conspiracy period (DE #251), (4) law enforcement responses and presence at the pharmacies (DE #260), (5) memes related to controlled substances (DE #255), (6) training materials found in defendants' possession (DE #257), and (7) training certificates of pharmacy employees (DE #263). For the reasons set forth below, all of these motions should be denied.

## ARGUMENT

As a threshold matter, the Government notes that in these motions, defendants are largely attempting to litigate, in advance of trial, whether the Government's proffered evidence is relevant, prejudicial, cumulative, or lacks foundation. These kinds of challenges are not particularly conducive (or appropriate) to be made through a pretrial motion in limine. To exclude evidence through a motion in limine, the evidence must be "clearly inadmissible on all potential grounds." *United States v. Anderson*, 563 F. Supp. 3d 691, 694 (E.D. Mich. 2021), aff'd, No. 22-1237, 2023 WL 3413905 (6th Cir. May 12, 2023) (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "When a court is unable to determine whether certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in the proper context." *Id.* Thus, defendants' motions seeking the wholesale exclusion of large swaths of the Government's proposed exhibits months before trial should be rejected.

Additionally, because the Government was ordered to produce its proposed exhibits weeks in advance of when the date trial was originally scheduled to proceed—and over five months before trial is now scheduled to begin—the Government has not yet finalized its evidentiary presentation. Accordingly, to meet the Court's October 31, 2023 deadline to disclose exhibits, the Government endeavored to mark any exhibits, including photographs, that it might seek to introduce at trial (after meeting with its witnesses), as well as exhibits that might be needed to rebut potential defenses by defendants.[1] At that point, the Government sought to identify the universe of evidence that it may seek to admit at trial, but the final decisions regarding whether to

---

[1] Indeed, as of the date of this response, the parties are still over nine weeks out from trial and the Government still has multiple witnesses to meet with in preparation for trial.

offer particular pieces of evidence (and the relative probative value of the evidence) will depend upon the testimony of witnesses at trial. Additionally, the probative value of some of the exhibits will, in part, rise and fall depending on variables that are yet undetermined, such as how other evidence will come in at trial, the defenses asserted, and the lines of cross-examination that defendants pursue. In other words, the Government may choose not to offer into evidence all exhibits at issue here. However, it maintains that all exhibits are individually relevant under Federal Rule of Evidence 401.[2]

Federal Rule of Evidence 401 defines relevant evidence as evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Making a "fact of consequence" more likely is not limited to the elements of the offense or the ultimate issue. Rather, a fact of consequence can be a mere inference that helps lead to an "ultimate fact," and such inference may travel along multiple "evidentiary route[s]" to arrive at the ultimate fact. *Old Chief v. United States*, 519 U.S. 172, 179 (1997). Further, these facts may relate to anticipated defenses, such as a "mere presence" defense. *See United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007) ("Federal courts have repeatedly held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense.").

Relevant evidence is admissible and may only be excluded "if its probative value is *substantially* outweighed by the danger of *unfair* prejudice." *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (emphasis in original) (citing Fed. R. Evid. 403); *see also United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015) ("A defendant is not afforded the right to be free of all prejudicial evidence, merely evidence that is unfairly prejudicial to the extent that it

---

[2] Notwithstanding its burden of proof, the United States does not intend to offer unnecessarily cumulative or repetitive evidence, and it is mindful of the Court's broad discretion pursuant to Federal Rules of Evidence 403, 611(a), and otherwise.

3

outweighs its probative value."). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (internal quotations omitted). Rule 403 balancing favors admissibility, and exclusion under "Rule 403 is an 'extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" *United States v. Hofstetter*, 2019 WL 6718489, at *5 (E.D. Tenn. Dec. 9, 2019) (quoting *United States v. Taylor*, 2006 WL 3359280, at *1 (E.D. Tenn. Nov. 17, 2006)). In conducting a Rule 403 balancing test, courts "'must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (quoting *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984)).

Rule 403 also does not bar all duplicative evidence, and relevant evidence, even evidence that is cumulative, overlapping, and similar in nature, should only be excluded "if the need to avoid cumulative presentation 'substantially' outweighs the probative value of the evidence." *United States v. Fields*, 483 F.3d 313, 356 (5th Cir. 2007); *see also United States v. Brown*, 597 F.3d 399, 406 (D.C. Cir. 2010) (stating evidence should only be deemed "cumulative" when the "evidence on one side is so full that no jury that rejected it would be likely to change its mind because of the introduction of the proffered evidence") (citation omitted). In other words, the fact that some evidence or testimony has already been introduced on a point does not render additional evidence needlessly cumulative. *See Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007) (observing that "[t]he mere fact that one other witness has testified to a particular fact does not render other testimony on that point 'cumulative.'"). For this reason, the *Fields* court explained that 32 crime scene photos were not unduly cumulative because "many of the photos had different relevance

from other photos" and that, "[w]hile not every photo had probative value strictly independent from any other evidence presented, some of the photos clearly supported points distinct from points made by others." *Fields*, 483 F.3d at 356. The *Fields* court also cautioned that courts should be wary when a defendant tries to avoid the introduction of relevant evidence by claiming such information is cumulative. *See id.* (citing *Old Chief*, 519 U.S. 172).

Because the evidence defendants seek to exclude is relevant and not unduly prejudicial or needlessly cumulative, all of defendants' motions in limine referenced above should be denied.

### A. Motion to Exclude Photograph of and Testimony About a "Tulip Buck"

In defendants Joint Motion in Limine Number One (DE #247), they seek to exclude Government Exhibit 710, which depicts a photograph of a "Tulip Buck" or "Flower Buck," and all testimony regarding "Tulip Bucks" or "Flower Bucks." Defendants make two arguments supporting exclusion, both of which are without merit.

First, they argue that the evidence is irrelevant under Rule 401, because Exhibit 710 is "without any context" and therefore impossible to evaluate if it is probative of any fact of consequence. This argument does not establish that this evidence is "clearly inadmissible on all potential grounds," *Anderson*, 563 F. Supp. 3d at 694; rather, it underscores the need to wait until trial to evaluate the exhibit's relevance in context. The Government anticipates that witness testimony and other evidence elicited at trial will establish that defendant Weir, who *is* charged with conspiring to violate the Anti-Kickback Statute, was aware of "Tulip Bucks" and was informed that "Tulip Bucks," which were similar to the "Monkey Bucks" used by Dale Hollow Pharmacy, violated the Anti-Kickback Statute, yet he continued to pay patients to keep filling their prescriptions at Dale Hollow Pharmacy. Government Exhibit 710 and evidence related to "Tulip Bucks" is thus highly probative of Weir's knowledge and intent.

Any potential prejudice to defendant Spivey by admission of Government Exhibit 710 is minimal compared to the probative value of this evidence to show Weir's knowledge and intent to violate the Anti-Kickback Statute. The fact that this evidence links Dale Hollow Pharmacy and Clay County Xpress Pharmacy does not establish that it is unfairly prejudicial. Notwithstanding Spivey's attempts to distance herself from Dale Hollow Pharmacy, the two pharmacies became inextricably linked when Spivey sold a majority interest in Clay County Xpress Pharmacy to Weir. The introduction of evidence related to "Tulip Bucks" does not tend to "conjur[e] a link" that doesn't exist.

Because the probative value of Government Exhibit 710 and related testimony related to "Tulip Bucks" is not substantially outweighed by the risk of unfair prejudice, defendants' Joint Motion in Limine Number One should be denied.

**B. Motion to Exclude 219 Government Exhibits as Cumulative**

In Defendant's Joint Motion in Limine Number Two (DE #250), defendants seek the wholesale exclusion of 219 of the Government's proposed exhibits as "needlessly cumulative." (DE # 250 at PageID #: 1177.) Defendants do not argue that these exhibits are not relevant; rather, they claim that the Government should be limited to "one or two" exhibits in each category they identify because that is sufficient to "serve the Government's purpose." This unsupported assertion belies defendants' complete lack of any authority or justification for their requested relief.

As an initial matter, it is very possible that the Government will *not* seek to admit each and every exhibit it marked and disclosed in October 2023. At that point, the Government sought to identify the universe of evidence that it may seek to admit at trial, but the final decisions regarding whether to offer particular pieces of evidence will depend upon who ultimately testifies at trial in April (including defendants) and what they say. As of the date of this filing, more than nine weeks

6

Case 2:21-cr-00008    Document 302    Filed 01/26/24    Page 6 of 15 PageID #: 1615

out from trial, the Government still has numerous witnesses to meet with in preparation for trial. These witness interviews will help further narrow the exhibits the Government seeks to admit at trial but it is unlikely that the Government will be able to say with certainty until trial which exhibits it will ultimately seek to admit. If, at trial, defendants believe that the evidence presented is "needlessly cumulative," defendants may object to the admission of that evidence at the time the Government seeks to admit it.

With respect to the summary charts defendants seek to exclude, defendants in their motion effectively explain how all of these charts and graphs are "slightly different" and present the evidence they summarize in different ways. The fact that there are numerous summary charts does not make them "needlessly cumulative." Even evidence that is duplicative (which this is not) should only be excluded "if the need to avoid cumulative presentation 'substantially' outweighs the probative value of the evidence." *Fields*, 483 F.3d at 356. Defendants have failed to show that the probative value of these summary charts is substantially outweighed by the need to avoid cumulative presentation. Additionally, again, it is very possible that the Government will not seek to admit each and every summary chart; however, the probative value of certain summary charts will depend on how the evidence comes in at trial.

Accordingly, defendants' motion to exclude 219 photographs, summary charts, and other documents as "needlessly cumulative" should be denied.

**C. Defendants' Motion to Exclude "Old, Stale" Documents Should Be Denied**

In their Joint Motion in Limine Number Three (DE #251), defendants move to exclude all of the Government's proposed exhibits dated from 1993 to 2013, alleging that their admission will cause "undue delay and waste of time," and because some "would be unfairly prejudicial." (DE #251 at PageID #: 1198.) The motion includes no argument or authority to support of these

conclusory statements, except to say that the exhibits identified in the motion are outside of the charged conspiracy period and are thus "inappropriate in this case." (*Id.*) This argument fails as to each of the exhibits defendants seeks to exclude.

Exhibit 14 is, contrary to defendants' assertion, not dated "10/14/10," but is from 2016, placing it squarely within the conspiracy period. The Government expects that witness testimony, corroborated by DEA reports that have been provided to defendants, will bear out that this document was written and posted in Dale Hollow Pharmacy after DEA met with pharmacy management in October 2016 following DEA's 2016 inspection of the pharmacy. This document is therefore relevant and defendants have not identified any prejudice resulting from its admission at trial. *See Whittington*, 455 F.3d at 739.

Exhibits 58, 59, 61, 70, and 71 are provider agreements signed by certain of the defendants that are relevant to establish defendants' knowledge and intent. The mere fact that they predate the charged conspiracy period does not make them irrelevant or unfairly prejudicial. The same is true for Exhibits 189, 191, 203, 204, 209, 210, 338, 339, 340, 342, 343, 344, 345, 371, 378, and 380. All of these exhibits go directly to defendants' knowledge and intent, as they all have a tendency to make it more likely that one or more of the defendants was aware during the charged conspiracy period that their conduct, and that of their co-conspirators, was unlawful.

Exhibits 149-152, 155-157, 165, 393, 407, 409, which consist of Tennessee Board of Pharmacy consent orders related to defendant Donaldson and pharmacists employed by the two pharmacies during the charged conspiracy, are relevant to show one of the means and methods by which defendants were able to accomplish their scheme, which was to hire employees with licensing issues who had a difficult time finding other employment and thus could be pressured to participate in defendants' conspiracies to dispense unauthorized controlled substances and defraud

the government. These exhibits are thus relevant to the facts of this case even though they predate the charged conspiracy period.

Finally, Exhibits 371, 372, and 374 are email communications with defendant Spivey that tend to show that Spivey was made aware as early as 2013 of certain red flags related to the prescribing of controlled substances. For example, the materials attached to these emails to Spivey discuss the corresponding responsibility of pharmacists and discuss a DEA suspension order of a pharmacy engaged in conduct similar to that alleged in this case, including filling dangerous combinations of opioids, muscle relaxers, and anti-anxiety medication (sometimes referred to as the "trinity"), patients traveling long distances to fill prescriptions, doctor shopping, patients overdosing, and other red flags of abuse and diversion. Additionally, the "corrective action plan" discussed in these communications was subsequently signed by Spivey, and included multiple steps the pharmacy stated it would take to address issues raised in these emails about Clay County Xpress Pharmacy's controlled substance dispensing. (*See* Government Exhibit 376.) The Government anticipates that witness testimony will establish that the pharmacy did not implement the policy changes listed in the corrective action plan signed by Spivey. Thus, these exhibits are relevant to establish Spivey's knowledge and intent at the time the Government alleges she joined the charged conspiracies and engaged in the criminal conduct alleged in the indictment.

Because all of the exhibits defendants seek to exclude as "old" and "stale" are relevant and defendants have failed to establish any unfair prejudice by their admission at trial, defendants' Joint Motion in Limine Number Three should be denied.

### D. Defendants' Motion to Exclude Photographs of Police at the Pharmacies and Related Evidence Should Be Denied

Defendant's Joint Motion in Limine Number Five (DE #260) seeks the exclusion of 13 exhibits (Government Exhibits 1-2, 699, 702-04, 709, 713-15, and 718-20) and all related evidence

9
Case 2:21-cr-00008   Document 302   Filed 01/26/24   Page 9 of 15 PageID #: 1618

of first responder and law enforcement responses to the two pharmacies. Defendants argue that this evidence is not relevant and unfairly prejudicial to defendants. Both of these arguments fail.

The evidence defendants seek to exclude is highly probative of defendants' knowledge that the prescriptions they were filling were not for a legitimate medical purpose. Patients overdosing in the pharmacy[3] and law enforcement arresting pharmacy patients outside the pharmacy are red flags that tend to make it more likely that defendants and their co-conspirators knowingly conspired to violate the law. Indeed, direct evidence of such knowledge is reflected in a police report from 2016 that summarizes a call that the Celina Police Chief received from Weir in which Weir complains about police presence near his pharmacies, specifically references officers pulling over pharmacy patients, and states that he does not want police on his property because he believes that they are "running his customers off." The evidence defendants seek to exclude is thus directly relevant to the facts of this case.

The substantial probative value of this evidence is not outweighed by the risk of unfair prejudice. The only "unfair prejudice" defendants identify in their motion is premised on the assumption that these photographs and related testimony have no connection to this case. But as discussed above—and as the Government anticipates will be shown at trial—this is simply not

---

[3] The Government anticipates that witness testimony and other evidence will establish that Patient A.G. was a patient of Dale Hollow Pharmacy but that A.G., her husband, and their associates would often frequent Clay County Xpress where members of their group, who traveled to the pharmacies together, would fill prescriptions. Additionally, an ambulance outside Clay County Xpress would have been visible from outside Dale Hollow Pharmacy, which is just three buildings up the street.

10

Case 2:21-cr-00008   Document 302   Filed 01/26/24   Page 10 of 15 PageID #: 1619

true. These photographs and related evidence are not "propensity evidence"; rather, they go directly to defendants' knowledge and intent to commit the crimes charged in this case.

### E. Defendants' Motion to Exclude Memes Should Be Denied

In Defendants' Joint Motion in Limine Number Six (DE #255), defendants seek the exclusion of three exhibits that depict memes related to controlled substance dispensing (Government Exhibits 665, 708, and 717). Defendants object to their admission because they are hearsay and allegedly present "serious authentication issues." Neither of these arguments has any merit.

First, these memes would not be admitted to prove the truth of the matter asserted, and thus are not hearsay. Fed. R. Evid. 801(c). Rather, these memes are offered to show defendants' state of mind, notice, and knowledge of controlled substance abuse, diversion, and red flags. Government Exhibit 665, for example, comes from co-conspirator John Polston's cellphone extraction and depicts the meme printed out and posted inside the pharmacy. The fact that this meme was posted inside the pharmacy and that other memes making derogatory references to the abuse and diversion of controlled substances were exchanged by pharmacy employees and defendants' co-conspirators is relevant to defendants' knowledge and intent.

Second, these photographs of memes do not, as defendants allege, present authentication issues. Because they are not being admitted to prove the truth of the matter asserted, so long as the Government is able to lay the proper foundation through witness testimony, they are properly admitted.

### F. Defendants' Motion to Exclude Training Materials Should Be Denied

Defendants' Joint Motion in Limine Number Eight (DE #257) seeks to exclude certain policies, manuals, and training guides (Government Exhibits 338-40, 342-45, 348-51, 353, 354,

11
Case 2:21-cr-00008   Document 302   Filed 01/26/24   Page 11 of 15 PageID #: 1620

358, 362, 377-80, 385, 386, 394, 396, and 404) pursuant to Federal Rule of Evidence 403 because these materials are "needlessly cumulative" and "misleading to the jury."

These documents were all recovered from computers inside Dale Hollow Pharmacy ("S1") and Clay County Xpress Pharmacy ("S2")[4] when law enforcement executed search warrants at the two pharmacies in February 2019. Testimony and other evidence will establish that defendants and their co-conspirators had access to these computers and the materials stored thereon. Thus, Government Exhibits 338-40, 342-45, 348-51, 353, 354, 358, 362, 377-80, 385, 386, 394, 396, and 404 are relevant to defendants' knowledge and intent, as having all of these materials in their possession tends to make it more likely that defendants were aware they were violating the law. *See United States v. NHML, Inc.*, 225 F.3d 660 (6th Cir. 2000) (allowing state regulations pertaining to Medicaid and Medicare billing to show intent and motive); *United States v. Delgado*, 668 F.3d 219, 227 (5th Cir. 2012) ("Because Delgado had access to the regulatory publications and had read at least some of them, the material also was relevant because it increased the probability that Delgado knew her billing practices were illegal"); *United States v. Singh*, 390 F.3d 168, 188 (2d Cir. 2004) (finding sufficient evidence to show physician's intent to defraud and relying in part upon physician's possession and knowledge of contents of billing manuals). Here, for example, documents about Anti-Kickback violations found on both Dale Hollow and Clay County Xpress pharmacy computers have a tendency to make it more likely that defendants Weir and Donaldson were aware of the Anti-Kickback Statute and knowingly violated it when they paid

---

[4] In response to defendants' December 22, 2023 letter regarding exhibit list questions (*see* DE #290-2), the Government explained to defendants that "S1" and "S2" identify the site where electronic evidence marked with that prefix was recovered.

patients to keep filling their prescriptions at Dale Hollow. The probative value of these exhibits is thus substantial, especially when taken all together.[5]

Any potential confusion these exhibits might cause can be effectively mitigated by a limiting instruction regarding the proper consideration of such evidence. Indeed, Sixth Circuit Pattern Jury Instruction 1.02 specifically directs the jury to "take the law that I [the court] give you" and "apply it to the facts."

The documents defendants seek to exclude in their motion are being offered to prove defendants' knowledge and intent and are thus admissible as non-hearsay evidence whose relevance is not substantially outweighed by any confusion defendants allege their admission may cause. Defendants' motion should therefore be denied.

### G. Defendants' Motion to Exclude Training Certificates Should Be Denied

In defendants' Joint Motion in Limine Number Nine (DE #263) seeks exclusion of Government Exhibits 43, 319, 320, 325-336, 365, 387-392, 395, and 417-21, arguing that these pharmacy employee training certificates are irrelevant and unfairly prejudicial. However, in a footnote defendants concede that these certificates may be admissible if the person who earned the certificate testifies. Thus, a motion in limine seeking their wholesale exclusion months before trial—and well before the Government has finalized its witness list—is inappropriate. *United States v. Anderson*, 563 F. Supp. 3d 691, 694 (E.D. Mich. 2021) ("A court should exclude evidence on a motion in limine only when that evidence is determined to be clearly inadmissible on all

---

[5] The unpublished cases from outside this district cited by defendants in their motion do not provide any support for the exclusion of the policies, manuals, and training guides identified in defendants' motion. Those cases, which are not binding on this Court, all deal with plaintiffs in civil cases attempting to establish the relevant standard of care through the introduction of manuals or internal policies; here, the Government's proposed exhibits, which were found in defendants' possession, are being introduced to show defendants' notice and knowledge of the relevant laws, rules, and regulations that they are alleged to have violated.

13
Case 2:21-cr-00008   Document 302   Filed 01/26/24   Page 13 of 15 PageID #: 1622

potential grounds.")[6] This Court should thus deny defendants' motion and reserve any rulings on the admissibility of specific certificates until trial.

## CONCLUSION

For the foregoing reasons, the Court should deny defendants' joint motions in limine to exclude (1) a photograph of a "Tulip Buck" (DE #247), (2) 219 photographs, summary charts, and other documents alleged to be "needlessly cumulative" (DE #250), (3) all documents that pre-date the alleged conspiracy period (DE #251), (4) law enforcement responses and presence at the pharmacies (DE #260), (5) memes related to controlled substances (DE #255), (6) training materials found in defendants' possession (DE #257), and (7) training certificates of pharmacy employees (DE #263).

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney for the
Middle District of Tennessee

*/s/ Nani Gilkerson*
SARAH K. BOGNI
NANI M. GILKERSON
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone: 615-736-5151

---

[6] The Government procured and produced to defendants a copy of CMS's training "Combating Medicare Parts C and D Fraud, Waste and Abuse (December 2015), which should alleviate defendants' concern, at least with respect to Government Exhibits 319, 325, 326, 327, 328, 332, and 334, that the jury will not know the content of the course associated with the certificates.

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically filed a copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel for all defendants in this case.

/s/ *Nani Gilkerson*
NANI M. GILKERSON
Assistant United States Attorney