UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:21-CR-00008 |
| | ) | |
| [3] WILLIAM L. DONALDSON | ) | JUDGE TRAUGER |
| | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT DONALDSON'S MOTION IN LIMINE NUMBER FIVE (MOTION TO EXCLUDE REFERENCES TO MR. DONALDSON AS A PHARMACIST)**

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorneys Sarah K. Bogni and Nani M. Gilkerson, hereby presents a response in opposition to defendant William Donaldson's motion to exclude any references to defendant Donaldson as a pharmacist. (DE #278.) For the reasons set forth below, defendant's motion should be denied.

At trial, the United States will seek the admission of evidence of that defendant William Donaldson was previously a licensed pharmacist.[1] This evidence is relevant and admissible and is intrinsic to the charges in this case. In the alternative, it is permissible under Federal Rule of Evidence 404(b).[2]

---

[1] Defendant Donaldson also filed a motion in limine seeking to exclude prior board actions related to Donaldson's pharmacy license, and other evidence. (DE #253.) The United States addressed at length the admissibility of a Board of Pharmacy consent order whereby Donaldson agreed to a revocation of his license to practice pharmacy, as well as other associated board actions and a prior conviction. (DE #301.) Much of the analysis and argument is directly duplicative of the issues herein since referring to board actions also requires evidence that Donaldson was a pharmacist. The United States incorporates that response by reference.

[2] On October 24, 2023, the United States provided defendants with a written notice detailing eleven categories of evidence it may seek to admit as intrinsic evidence, or in the alternative, pursuant to

## PROCEDURAL AND FACTUAL BACKGROUND

This case centers around two pharmacies in Celina, Tennessee, a small town in rural Clay County near the Kentucky border.[3] Dale Hollow Pharmacy was originally known as "Donaldson Pharmacy," and was owned and operated by defendant William Donaldson. Prior to 2012, Donaldson was a licensed pharmacist. In 2011, Donaldson was charged by federal indictment for the illegal distribution of hydrocodone from the pharmacy to a patient of the pharmacy. *United States v. William L. Donaldson*, Case No. 3:11-CR-00079 (M.D. Tenn.). In late 2012, he pleaded guilty to illegally dispensing hydrocodone to a patient and in 2013 he was sentenced to serve fifteen months in prison followed by a period of supervised release. As a result of the illegal dispensing, Donaldson agreed to the revocation of his license to practice pharmacy and admitted his conduct to the Tennessee Department of Health, Board of Pharmacy, by consent order. (DE #301-1, consent order.) Donaldson transferred ownership of the pharmacy to defendant Charles Oakley,[4] Donaldson's brother-in-law and a licensed pharmacy technician, and Donaldson's sister, Anne Oakley, a pharmacist. By 2014, Dale Hollow Pharmacy was struggling financially after many of its patients abandoned the pharmacy in the absence of Donaldson and moved to neighboring Clay County Xpress Pharmacy. Defendant Pamela Spivey owned Xpress Pharmacy. Spivey was a former pharmacy technician at Donaldson Pharmacy who left Donaldson's employment and opened her own competing pharmacy.

During Donaldson's incarceration, the Oakleys hired pharmacist John Polston. Polston previously worked for defendant Spivey at Xpress Pharmacy. Polston had prior suspensions of

---

Rule 404(b). The United States followed up in writing with an expanded category on October 26, 2023. (DE #253-1.)

[3] A detailed factual background will be provided in the United States' Trial Brief.

[4] Mr. Oakley pleaded guilty in January 2024.

his license in Kentucky for wrongful distribution of controlled substances. In the Spring of 2014, Donaldson was released from prison and began his term of supervised release. At around the same time, defendant Thomas Weir decided to purchase a majority interest in the Dale Hollow Pharmacy, and immediately invited Donaldson to return to the pharmacy. Officially, Weir hired Donaldson to work as a "greeter" in the pharmacy, signing people up for Medicare Part D prescription plans, in an effort to recruit Donaldson's old patients back to the pharmacy.

Weir, Oakley, Donaldson, and other employees of the pharmacy, including Polston, engaged in multiple schemes to try to make the pharmacy profitable. They dispensed controlled substances indiscriminately, including dangerous combinations of Schedule II and Schedule IV controlled substances, outside the usual course of professional practice knowing the prescriptions they were filling were not for a legitimate medical purpose. They submitted claims to Medicare and Medicaid knowing that the drugs they dispensed were not medically necessary. They paid illegal kickbacks to patients to fill their prescriptions at Dale Hollow. They illegally paid patient copays, transported patients to doctor appointments to get prescriptions for controlled substances, and transported them back to the pharmacies to fill them. And they concocted a scheme to dispense massive quantities of buprenorphine, a controlled substance used to treat opioid-use disorder that was itself often diverted and abused.

After Dale Hollow Pharmacy recruited its patients back, and scores of new patients arrived for buprenorphine, Xpress Pharmacy began to struggle financially. Spivey reported Dale Hollow Pharmacy to the Board of Pharmacy for early refills of controlled substances and complained about Donaldson's presence at Dale Hollow, telling the Board that Xpress Pharmacy could not compete. In 2015, despite her knowledge of Donaldson's prior conviction and role at Dale Hollow Pharmacy, and despite reporting Dale Hollow to the Board of Pharmacy, Spivey sold a majority

3

interest in Xpress to Weir. Weir, in agreement with Spivey, immediately brought the buprenorphine-dispensing scheme to Xpress. Weir, Spivey, and other Xpress employees, including pharmacist-in-charge Michael Griffith, also agreed to fill invalid prescriptions and submit fraudulent claims to Medicare and Medicaid for medically unnecessary drugs. Like Polston, Griffith had prior adverse licensure actions.

It did not take long for the pharmacies to get on the radar of the Drug Enforcement Administration ("DEA"). Local law enforcement reported Dale Hollow Pharmacy to the DEA after an alarm call at Dale Hollow Pharmacy in 2014. On arrival, Weir refused to allow law enforcement into the pharmacy despite obvious evidence of the pharmacy being ransacked and pill bottles on the floor. Acting belligerent and swearing at law enforcement, Weir insisted they leave without investigating. After this incident, local law enforcement referred Dale Hollow Pharmacy to the DEA. After inspection, the DEA found numerous issues. The DEA continued to inspect the pharmacy. The DEA educated both Dale Hollow Pharmacy and Xpress Pharmacy staff about the proper laws regarding dispensing buprenorphine, as well as red flags. The DEA informed Dale Hollow about how high their buprenorphine dispensing was compared to their peer pharmacies, and that they were close to the top in the State of Tennessee, and that they were not following the State's dispensing laws. Board of Pharmacy personnel did as well. The Board of Pharmacy filed an action against Dale Hollow Pharmacy. After litigation, Weir, Oakley, and Polston entered into an Agreed Order with the Board over dispensing practices of controlled substances at the pharmacy. As a result, Dale Hollow had to hire an independent monitor, who immediately stated that Donaldson, as a felon, should be nowhere near the pharmacy.

In November 2016, Weir refused to pay Donaldson for his patient recruitment efforts and in response, Donaldson ransacked the pharmacy. Law enforcement responded and Weir pressed

4

charges. Documented on body worn camera footage, Donaldson was discovered to have prescription oxycodone in his pocket that was not prescribed to him but was prescribed to a patient of Dale Hollow Pharmacy. As a result, Donaldson was charged in Clay County General Sessions Court with illegal possession of a schedule II narcotic. Donaldson pleaded guilty to the possession charge in February 2017. This criminal conduct violated his federal supervised release. In 2017, the Honorable Waverly D. Crenshaw revoked Donaldson's supervised release and sentenced him to three months in a halfway house. At the hearing on the petition to revoke, Donaldson admitted to the possession, admitted to the vandalism of the pharmacy, and indicated it was because he had not been paid by Weir. When Donaldson was released, he returned to Dale Hollow Pharmacy. This time, however, in an effort to conceal Donaldson's role at Dale Hollow Pharmacy, Weir moved Donaldson to a warehouse on the town square and started paying him illegal kickbacks off the books, so that Donaldson would continue to keep his patients coming to Dale Hollow by paying their copays, taking them to doctors' appointments, and driving them back to Dale Hollow and Xpress to fill their prescriptions.

At the same time, in March 2017, Weir, Oakley, and Polston executed a Memorandum of Agreement with the DEA regarding problematic buprenorphine dispensing practices and other violations identified during DEA's 2016 inspections of Dale Hollow Pharmacy. This MOA was provided by Weir to Xpress employees. Despite the terms of these orders, the practices at Dale Hollow and Xpress pharmacies continued unabated. In June and August of 2018, the DEA and the Board of Pharmacy returned to Celina. The DEA executed Administrative Inspection Warrants in August 2018. Dale Hollow and Xpress had not changed their dispensing practices since the MOA; in fact, they had only gotten worse.

In February 2019, both pharmacies were shut down by a temporary restraining order and

preliminary injunction entered by this Court on February 7, 2019. Prior to February 2019, defendants had received numerous warnings over the course of years from the DEA, the Tennessee Board of Pharmacy, local law enforcement, and others, about the illegality of their dispensing practices, and were afforded multiple opportunities to correct their behavior. Defendants chose to blatantly ignore these warnings and instead, at best, paid lip service to the legal requirements and responsibilities placed on pharmacies to ensure that the prescription medication they dispense to their patients is medically necessary and appropriate.

In April 2019, a Grand Jury returned an indictment charging pharmacist John Polston with violations of federal law. In August 2020, pharmacist Michael Griffith was charged by criminal information with violations of federal law. In December 2020, John Polston was charged by superseding information with additional violations of federal law. In 2021, both pleaded guilty to federal charges.

On November 15, 2021, a Grand Jury sitting in the Middle District of Tennessee returned the Indictment in this matter, charging defendants Thomas Weir, Charles Oakley,[5] William Donaldson, and Pamela Spivey with violations of the United States Code, including conspiracy to distribute Schedule II, III, and IV controlled substances without authorization, that is, with no legitimate medical purpose outside the usual course of professional practice, in violation of Title 21, United States Code, Section 846 (Count One). (DE #3.)

The Indictment also charges all defendants with a health care fraud conspiracy, in violation of Title 18, United States Code, Section 1349 (Count Two), as well as defendants Thomas Weir and Pamela Spivey with individual counts of health care fraud, in violation of Title 18, United

---

[5] Mr. Oakley has pleaded guilty to a conspiracy to illegal dispense controlled substances and a health care fraud conspiracy.

6

States Code, Section 1347 (Counts Three through Six). *Id*. Lastly, defendants Thomas Weir and William Donaldson are charged with a conspiracy to defraud the United States and to commit the offense of violating the Anti-Kickback Statute, in violation of Title 18, United States Code, Section 371 (Count Seven). *Id*. The timeframe of the conduct alleged in the indictment spans the years 2014-2019.

On January 22, 2023, Defendant Donaldson filed a motion *in limine* seeking to exclude references to the fact that Donaldson used to be a pharmacist. (DE #278.) The Court should deny the motion because the evidence is relevant, intrinsic to the charges, or, in the alternative, permissible under Federal Rule of Evidence 404(b), and is not unfairly prejudicial under Rule 403.

## ARGUMENT

Evidence is relevant if it has *any* tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. The Sixth Circuit employs an "extremely liberal" relevancy standard. *United States v. Ramer*, 883 F.3d 659, 681 (6th Cir. 2018). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. *See United States v. Collins*, 799 F.3d 554, 577-78 (6th Cir. 2015) (citing Fed. R. Evid. 401).

Relevant evidence is generally admissible, Fed. R. Evid. 402, and should be excluded under Rule 403 only "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Federal Rule of Evidence 403 prohibits the admission of evidence if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson v. Runyon*, 149 F.3d 507, 514–15 (6th Cir. 1998) (emphasis in original). "Unfair prejudice does not mean the damage to a defendant's case that

7

results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993) (citations omitted).

The fact that Donaldson was a licensed pharmacist who owned Dale Hollow Pharmacy as "Donaldson Pharmacy," is relevant and admissible and there is not substantial risk that such probative evidence will unfairly prejudice the jury.

I. **The Evidence Is Relevant as Direct Evidence of the Charged Conduct or Is Inextricably Intertwined.**

The evidence is admissible because it is directly relevant to facts at issue in this case. As a threshold matter, defendant's motion relies on a faulty premise. Just because Donaldson no longer holds a license to practice pharmacy in Tennessee does not mean that he does not hold the education of a pharmacist. Likewise, the United States does not intend to refer to Donaldson as a current pharmacist. The United States intends to refer to Donaldson as a formerly licensed pharmacist and as the former owner of Donaldson Pharmacy. As the former owner of Donaldson Pharmacy, defendant Donaldson maintained a DEA registration through Donaldson Pharmacy that authorized the pharmacy to dispense controlled substances. The pharmacy was also enrolled in Medicare and TennCare which allowed Donaldson Pharmacy to bill Medicare and TennCare for prescriptions dispensed by the pharmacy. These facts are directly relevant to the charges in this case: conspiracy to illegally dispense, conspiracy to commit health care fraud, and conspiracy to violate the Anti-Kickback Statute.

Evidence that is probative of the crime charged is admissible so long as it tends to make a relevant fact more or less probable. Intrinsic evidence refers to acts "that are inextricably intertwined with the criminal act charged or a part of the criminal activity." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (internal quotations omitted). Intrinsic evidence does not

8

implicate Rule 404(b). *Id.*; *see also United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Proper background evidence has a causal, temporal or spatial connection with the charged offense." *Hardy*, 228 F.3d at 748. "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id*. The Sixth Circuit has explicitly said that "Rule 404(b) 'does not apply to evidence that itself is probative of the crime charged.'" *United States v. Sumlin*, 956 F.3d 879, 889 (6th Cir. 2020) (quoting *United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003)).

As described above, defendant's status as a previously licensed pharmacist is probative of the crimes charged because it is strong evidence that defendant possessed the knowledge to act willfully and had the requisite intent to commit the crimes charged, issues that the Government anticipates will be front and center at trial. The fact that Donaldson was a licensed pharmacist educated in pharmacy, as well as the former owner of Donaldson Pharmacy, which had contracts with Medicare and TennCare, makes it more likely that he had direct knowledge of the laws, rules, and regulations related to dispensing controlled substances and the billing requirements of Medicare and TennCare, including that he must comply with the Anti-Kickback Statute. It is also probative of the knowledge and intent of his co-defendants.

When drawing a distinction between intrinsic and extrinsic evidence of other "bad acts," courts have focused on a close causal, spatial, or temporal connection to the charged offense. But this type of analysis is only undertaken when the "other act" is not directly probative of the crime charged. *See, e.g., United States v. Sadler*, 24 F.4th 515, 555-56 (6th Cir. 2022) (considering whether prior drugs sales were part of a "single criminal episode" or whether they were background evidence); *United v. Clay*, 667 F.3d 689, 697-98 (6th Cir. 2012) (examining whether

9

prior theft "complete[d] the story of the offense"); *United States v. Hardy*, 228 F.3d 745, 748-49 (6th Cir. 2000) (finding error in admission of six-year old drug crimes as background and for purpose of showing development of conspiracy). Where the evidence is probative of the offense, as it is here, the analysis boils down to a simple question of relevancy. *See Price*, 329 F.3d at 906 (holding that certificate of completion of handgun course was not evidence of another act but "circumstantial evidence that [defendant] possessed the firearms and ammunition found"). The evidence the United States may introduce is directly relevant to the charges in this case and therefore admissible.

     Even if this Court were to analyze the causal, spatial, or temporal connection of the evidence the United States seeks to admit, the evidence should be admitted. The evidence explains why Donaldson returned to the pharmacy, why he had control over the pharmacy's patients, why Weir invited him back to the pharmacy and kept him on even with all of Donaldson's issues, why Donaldson had knowledge of pharmacy operations and dispensing when he directed pharmacists at Dale Hollow to dispense medications, and why he had knowledge of Medicare and TennCare insurance to sign up patients for prescription drug coverage at Dale Hollow Pharmacy in his role as "greeter." In fact, he sat a desk in the pharmacy with a sign that indicated he helped patients get Medicare Part D drug coverage. This information helps to complete the story and will provide the jury with evidence related to whether the defendants acted similarly or differently in connection with their dispensing during the charged conspiracy period. It also provides evidence of the conspiratorial agreement by showing Weir's motive for inviting Donaldson back to Dale Hollow Pharmacy, and for paying illegal kickbacks to Donaldson to continue to recruit patients, and

10

Case 2:21-cr-00008 Document 315 Filed 02/05/24 Page 10 of 20 PageID #: 1758

evidence of Weir's knowledge of the illegality of such payments by paying cash and hiding Donaldson's continued involvement with the pharmacy..[6]

That Donaldson was a licensed pharmacist and has the education of a pharmacist is inextricably intertwined with evidence relating to the overarching conspiracies because the evidence reflects defendant Donaldson's knowledge of the rules of pharmacy regarding dispensing and applicable criminal consequences for violating the law. It is relevant to put into context defendants' actions during the timeframe of the charged conspiracy and provide evidence of their knowledge with regard to the applicable laws and standards. It is evidence of knowledge and intent of Donaldson's co-conspirators that it was known by all that Donaldson had been the former owner of Donaldson Pharmacy, was a licensed pharmacist, and has the education of a pharmacist, and yet he openly pressured pharmacists to dispense controlled substances, and recruited patients through illegal inducements and by transporting patients to doctors' appointments for controlled substances and then back to the pharmacies to fill them. Without such evidence, the charged conduct is isolated without any context as to the attendant circumstances and defendants' state of mind as to dispensing decisions at the pharmacies. Without such information, there is no context as to how Donaldson controlled patients of the pharmacy in order to recruit them back, or by what purported authority he might threaten and influence dispensing decisions by pharmacists at Dale Hollow Pharmacy and Xpress Pharmacy.

---

[6] It is also true that the evidence of the defendants' knowledge of the consequences associated with violating the laws, rules, and regulations of DEA and Medicare or Medicaid are "necessary preliminaries to the crime charged." *See United States v. Daulton,* 266 Fed. App'x. 381, 384-85 (6th Cir. 2008) (permitting introduction of evidence dating back years showing defendant had been using similar tax preparation practices so jury could understand the fraudulent deductions on returns charged in the indictment). This evidence tends to show that the defendants had the knowledge that makes their later conduct willful.

This evidence fits squarely within established legal precedent finding such proffered evidence is admissible as intrinsic to the charged offenses and inextricably intertwined with the allegations as part of a continuing pattern of illegal activity. Donaldson's status as a formerly licensed pharmacist with the education of a pharmacist will provide the necessary prelude to the charge offenses. It is also directly probative of the charged offenses and complete the story. The evidence will demonstrate the background and practices of the pharmacies and the defendants during the applicable charged timeframe. The proffered evidence establishes the setting of the case and the circumstances that form the basis of the charges.

For all of the above reasons, this relevant evidence should be admitted as direct evidence of the charged crimes or as intrinsic evidence.

## II.     The Evidence Is Also Admissible Under Federal Rule of Evidence 404(b)

Donaldson's status as a former pharmacist with the education of a pharmacist is not an "other act" or a "bad act." However, if the Court determines that the evidence described supra constitutes "other acts" under Federal Rule of Evidence 404(b), it is still admissible. "Rule 404(b) is an inclusionary, rather than exclusionary, rule." *See, e.g.*, *United States v. Lattner*, 385 F.3d 947, 956 (6th Cir. 2004); *see also United States v. Trujillo*, 376 F.3d 593, 605–06 (6th Cir. 2004). The Rule allows the government to introduce evidence of "other crimes, wrongs, or acts" committed by the defendant so long as the evidence is not used merely to show propensity and if it "bears upon a relevant issue in the case." *Hardy*, 228 F.3d at 750. The Rule contains a non-exhaustive list of proper purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified" in the Rule.

12

*United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985). *See also United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996) (same).

In analyzing a Rule 404(b) motion, the Court must conduct a three-part analysis to determine whether evidence of prior bad acts should be admissible. First, the Court must examine whether there is sufficient evidence that the prior act occurred. Second, the Court must analyze whether the evidence is admissible for a proper purpose under the Rule. Third, the Court must decide whether the evidence is more unfairly prejudicial than probative under Rule 403. *See United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001); *United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011). Additionally, while Rule 404(b) evidence is admissible to prove any relevant issue other than character, the trial court must take care to identify the exact purposes for which the evidence is admitted, must make a record of its conclusion that the probative value outweighs the danger of unfair prejudice, and must properly instruct the jury on the limited purposes of Rule 404(b) evidence. *See United States v. Merriweather*, 78 F.3d 1070, 1075–76 (6th Cir. 1996); *United States v. Miller*, 115 F.3d 361, 366 (6th Cir. 1997) (procedures outlined in *Merriweather* not meant to be strict and inflexible).

As a threshold matter, there is no dispute as to the first prong, that the acts occurred: the parties agree that Donaldson was a licensed pharmacist. Donaldson's status as a pharmacist is really not an "other act" or a "bad act" at all. His education and training as a pharmacist remains, even if he no longer holds a current license. Here, the United States is not introducing evidence that Donaldson himself physically dispensed medications from the pharmacy counter. However, the United States does intend to introduce evidence of Donaldson influencing pharmacy dispensing decisions, and expects that pharmacist witnesses, as well as others who observed Donaldson's actions, will testify that Donaldson frequently attempted to influence dispensing decisions,

including by referencing his own experience as a pharmacist and by threats to take "his" patients away if the pharmacists did not do what Donaldson asked.

The evidence the government seeks to admit is offered for permissible purposes. As addressed above, the evidence the United States may introduce is highly probative of an issue other than defendant's character. The fact that Donaldson was a licensed pharmacist, and in that capacity was the owner of Donaldson Pharmacy with a DEA registration, put him on notice of the potential criminal liability associated with violating the laws, rules, and regulations and is highly probative of intent and knowledge. It is likewise probative of defendant Weir and Spivey's intent and knowledge. It also tends to show that the defendants' violations of the laws, rules, and regulations related to pharmacy dispensing were not the result of a mistake or an accident. The evidence also tends to prove plan, scheme, motive, opportunity, and preparation. The evidence identified *supra* satisfies the test of admissibility.

### A. Intent and Knowledge

The defendants' intent is an essential and material element that the government must prove beyond a reasonable doubt. The Sixth Circuit has consistently held that 404(b) evidence is admissible to prove intent. *See Trujillo*, 376 F.3d at 605-06; *United States v. Myers*, 123 F.3d 350, 362–63 (6th Cir. 1997); *Merriweather*, 78 F.3d at 1078; *United States v. Hardy*, 643 F.3d 143, 150-51 (6th Cir. 2011) (stating that 21 U.S.C. § 841(a)(1) distribution is a specific intent crime and 404(b) evidence can be properly used to show acted with specific intent).

The issue of intent necessarily involves determining a defendant's state of mind, which requires the jury to draw inferences from a defendant's conduct. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Thus, evidence of defendant's other acts "may be critical to the establishment of the truth" as to the material issue of intent and knowledge. *Id.*

Donaldson's status as a formerly licensed pharmacist is probative of Donaldson's intent to enter and engage in the charged illegal dispensing conspiracy, and knowledge of his status as a former pharmacist is probative of both Weir and Spivey's intent, including allowing Donaldson to sit at a desk inside the retail area of Dale Hollow Pharmacy and interact with patients, signing them up for Medicare Part D prescription plans and taking them to the doctor for prescriptions, and directing the pharmacists.

The United States anticipates that a central issue in this case will be defendants' intent, and here, the "prior act" of Donaldson's status as a previously licensed pharmacist is especially probative of intent because it goes directly to the charged conduct; because the charged statute is a specific intent crime; and because the defendants' intent or knowledge is likely to be a central, contested issue in this case. It also goes directly to evidence of the agreement in this case between the defendants and co-conspirators.

### B. Plan, scheme, motive, opportunity, and preparation

The evidence will also show the defendants' plan and scheme, motive, opportunity, and preparation. "[S]tandard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature.'" *Mack*, 258 F.3d at 554. The defendants' knowledge that Donaldson was a previously licensed pharmacist and that they nevertheless brought him into Dale Hollow to sign up patients for insurance coverage, transport patients to doctors, deliver medications, pay patient co-pays, and direct pharmacists – provides the basis to establish the admissibility of the latter pursuant to Rule 404(b), *i.e.*, to show plan, scheme, motive, opportunity, and preparation. *See United States v. Rodriguez*, 882 F.2d 1059, 1064-65 (6th Cir. 1989) (evidence that same house was used for prior drug transaction admissible to show plan). Indeed, when a prior act involves the same scheme or a similar "modus operandi," as the

present offense, the Sixth Circuit has found the evidence to be probative. *See United States v. Thompson*, 690 Fed. App'x 302, 308 (6th Cir. 2017).

Here, the evidence described herein, elicited through testimony, as well as documents and recordings, shows defendants' intent to commit the charged crimes with respect to the charged counts and establishes plan and scheme, motive, opportunity, and preparation that defendants consistently dispensed controlled substances to patients in disregard of the risks and billed federal health care programs for medically unnecessary prescriptions, as well as violated the law in paying kickbacks to keep patients at Dale Hollow Pharmacy. As such, the evidence is indicative of defendants' plan, motive, scheme, opportunity, and preparation to dispense medically unnecessary controlled substances to patients, not for a legitimate medical purpose or their medical benefit but so they would keep coming back to the pharmacies. That, too, is evidence of motive – the defendants' financial gain. Donaldson could no longer work as a pharmacist but accepting Weir's invitation to return to Dale Hollow Pharmacy allowed him to be paid to recruit patients and influence pharmacists at the pharmacy Donaldson previously owned. The evidence proffered by the government in this case is admissible to prove intent, knowledge, plan, scheme, motive, preparation, and opportunity, as well as absence of mistake, and easily passes muster under Rule 404(b).

### III. <u>Probative value outweighs unfair prejudice</u>

Federal Rule of Evidence 403 provides that relevant evidence may be excluded only if the probative value is "substantially" outweighed by the danger of *unfair* prejudice. The trial court has "broad discretion" in balancing probative value against unfair prejudice. *See United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999); *see also United States v. Vance*, 871 F.2d 572, 576-77 (6th Cir. 1989) (stating the question is whether it is unfair and noting "[a]n important indication of

probative value of evidence is the prosecution's need for the evidence in proving its case"); *Hardy*, 643 F.3d at 151-53; Fed. R. Evid. 403. Relevant evidence is inherently prejudicial. Defendant Donaldson repeatedly refers to evidence as "highly prejudicial." (DE #278 at 2.) But that is not the standard. *Unfair* prejudice "does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed [unfairly] prejudicial." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (brackets in original) (citations omitted). As such, Rule 403 "is not designed to permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none." *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). Rule 403, furthermore, is a balancing test "strongly weighted toward admission." *United States v. Sosa-Baladron*, 800 F. App'x 313, 327 (6th Cir. 2020). "[D]efendants are not entitled to a 'sanitized' recounting of the facts, and [ ] prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *United States v. Peete*, 781 F. App'x 427, 433 (citation omitted). Such is true in this case.

The proffered evidence does not in any way suggest a verdict on a prejudicial or impermissible basis. Additionally, because of the burden-shifting approach articulated in *Ruan*, the United States anticipates that defendants will claim that they lacked the requisite intent or knowledge. *Ruan v. United States*, 597 U.S. 450 (2022). *Ruan* shifted the *mens rea* requirement to prove the defendants knowingly acted in an unauthorized manner. *United States v. Hofstetter*, 80 F.4th 725, 729 (6th Cir. 2023) (citing *Ruan* that government must prove the defendant subjectively knew or intended that the prescription was unauthorized.); *United States v. Suetholz*, No. 21-56-DLB-CJS, 2022 WL 3973255 at * (E.D. Ky. Aug. 30, 2022) ("*Ruan* 'confirmed' the relevance of the evidence of prior administrative actions because the United States is required to

prove the defendant *knowingly* acted in an unauthorized manner.) (citation omitted; emphasis in original.) Thus, evidence tending to show knowledge of the laws and consequences for breaking the law based on defendant's status as a formerly licensed pharmacist with the education of a pharmacist who had previously enrolled in Medicare and TennCare, goes to the key issue of knowledge and intent and is not unfairly prejudicial. *United States v. Logan*, 250 F.3d 350, 368-69 (6th Cir. 2001) (rejecting Rule 403 challenge on appeal to the admission of letters of reprimand by administrative body: "Viewing the evidence in the light most favorable to the prosecution, the evidence at issue was properly admitted to demonstrate Appellants' knowledge, motive, and intent.").

When Donaldson entered into the conspiracies with which he is charged, he brought with him the knowledge he had as a formerly licensed pharmacist with an education in pharmacy whose pharmacy was enrolled in Medicare and TennCare.

As noted above, such evidence is highly probative of the defendants' *mens rea* surrounding the charged conduct. Therefore, the probative value of such evidence is not substantially outweighed by any concerns of unfair prejudice.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny defendant Donaldson's motion to exclude references to Donaldson as a pharmacist, as that status is relevant and intrinsic, or in the alternative, permissible under Rule 404(b) and should not be excluded under Rule 403.

                                                                                           Respectfully submitted,

                                                                                           HENRY C. LEVENTIS
                                                                                           United States Attorney
                                                                                           Middle District of Tennessee

BY: */s/ Sarah K. Bogni*
SARAH K. BOGNI
NANI M. GILKERSON
Assistant U. S. Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone: (615) 736-5151

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served via CM/ECF to counsel for defendants, on this, the 5th of February, 2024.

                                      /s/ Sarah K. Bogni
                                      Sarah K. Bogni