NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0084n.06

No. 24-5335

| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | FILED<br>Feb 12, 2025<br>KELLY L. STEPHENS, Clerk |
|---|---|

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| THOMAS K. WEIR; WILLIAM L. DONALDSON; PAMELA SPIVEY, | ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendants allegedly conspired to recruit patients and distribute medically unnecessary prescription opioids at two pharmacies in rural Tennessee. As a result, a federal grand jury indicted them for various drug-conspiracy and healthcare-fraud charges. Before trial, the district court excluded evidence related to defendant William Donaldson's prior federal and state convictions involving the distribution and possession of opioids, as well as defendant Pamela Spivey's prior complaint to the Tennessee Board of Pharmacy detailing allegations of her co-defendants' unprofessional prescribing practices. The government challenges those evidentiary rulings in this interlocutory appeal. For the following reasons, we affirm the district court's exclusion of Donaldson's federal convictions and Spivey's complaint, reverse the district court's exclusion of Donaldson's state conviction, and remand for further proceedings consistent with this opinion.

No. 24-5335, *United States v. Weir et al.*

I.

A.

The government's trial theory, articulated in its trial brief, is as follows.[1] William Donaldson opened Donaldson Pharmacy in 2002, where he worked as a pharmacist until 2011 when he was indicted in the Middle District of Tennessee for five counts of illegally distributing hydrocodone to a patient at the pharmacy. In 2013, Donaldson pleaded guilty to all five counts and was sentenced to 15 months' imprisonment and three years of supervised release. Based on this conduct, Donaldson agreed to a revocation of his pharmacy license. Donaldson then transferred ownership of the pharmacy to other individuals and served his term of imprisonment.

Around the time Donaldson was released from prison and began his term of supervised release, defendant Thomas Weir purchased a majority interest in the pharmacy and rebranded it as Dale Hollow Pharmacy in April 2014. To make Dale Hollow more profitable, Weir invited Donaldson to return to the pharmacy as a "greeter." Despite his criminal history, Donaldson had maintained relationships with loyal customers and recruited his old patients back to the pharmacy in an effort to help the pharmacy fill medically unnecessary opioid prescriptions for patients with drug-abuse problems. To do so, Donaldson helped patients sign up for Medicare and Medicaid, covered patient co-pays, and chauffeured patients to and from doctor's appointments and then back to the pharmacy. Patients were allegedly required to repay Donaldson for these services with cash and pills that they obtained from Dale Hollow.

---

[1]Of course, the government has not yet presented and proven these facts. But the district court appeared to rely on such facts when deciding the motions in limine, and we do so here as well for purposes of considering the government's interlocutory appeal. *See, e.g.*, *United States v. Peete*, 781 F. App'x 427, 429 (6th Cir. 2019).

-2-

No. 24-5335, *United States v. Weir et al.*

Because Dale Hollow "endeavored to fill any and all prescriptions," word quickly spread that it would fill prescriptions that other pharmacies would not. This business practice harmed a neighboring pharmacy, Clay County Xpress Pharmacy, owned by Pamela Spivey. Concerned with Dale Hollow's unscrupulous prescription-writing practices, Spivey filed a complaint with the Tennessee Board of Pharmacy in 2014. She complained that Dale Hollow typically refilled controlled-substances prescriptions two to three days early, did not properly report to the Controlled Substances Monitoring Database, and employed Donaldson—who was doing pharmacist's work—despite the revocation of his license. She also detailed an "incident" where Dale Hollow filled a patient's medication 14 days early. Spivey therefore complained that neither Xpress, nor any other pharmacy following the appropriate protocols, could compete with Dale Hollow.

Despite Spivey's concerns about Weir's operation of Dale Hollow, she sold a majority interest of Xpress to Weir in October 2015. After Weir's purchase, "Xpress followed Dale Hollow's model and filled any prescription no matter the red flags." Like Dale Hollow, Xpress began to fill "dangerous combinations of controlled substances to pharmacy patients who were abusing and diverting drugs."

Within the next year, Weir and Donaldson's relationship began to sour. Donaldson repeatedly threatened to take his patients from Dale Hollow if pharmacy staff refused to fill their prescriptions, and Weir refused to pay Donaldson for his patient-recruitment efforts. Eventually, Donaldson ransacked the pharmacy in retaliation. When law enforcement responded, they caught Donaldson with prescription oxycodone in his pocket that belonged to his roommate (who happened to be a Dale Hollow patient). For this conduct, Donaldson ultimately pleaded guilty in 2017 to illegal possession of a schedule II narcotic in Tennessee state court. As a result of this

No. 24-5335, *United States v. Weir et al.*

conviction, Donaldson's federal supervised release (for the 2013 illegal-distribution-of-hydrocodone convictions) was revoked, and Donaldson spent three months in a halfway house.

Upon Donaldson's release, Weir re-hired Donaldson at Dale Hollow, but he required Donaldson to work at a warehouse rather than the pharmacy. Nevertheless, Donaldson continued his old duties: recruiting patients, driving them to and from appointments, and paying their co-pays. This time, however, Weir stopped reporting Donaldson as an employee to the state of Tennessee and started paying him in illegal cash kickbacks off the books.

From 2014–2019, both the Tennessee Board of Pharmacy and the Drug Enforcement Administration monitored and investigated Dale Hollow; each "repeatedly identified red flags." These regulatory entities were concerned with recordkeeping violations, the high amount of controlled substances that Dale Hollow was dispensing, and the fact that Donaldson (who had a prior felony for illegally dispensing out of the pharmacy) was employed at Dale Hollow. After years of failing to comply with federal, state, and local controlled-substances-dispensing laws, authorities ultimately shut down Dale Hollow and Xpress in February 2019.

B.

A grand jury eventually charged Weir, Donaldson, and Spivey with conspiring to distribute controlled substances, including oxycodone and hydrocodone, without authorization, in violation of 21 U.S.C. §§ 841(a)(1), 846; and conspiring to commit health-care fraud, in violation of 18 U.S.C. §§ 1347, 2. It also charged Weir with four counts, and Spivey with two counts, of health-care fraud, in violation of 18 U.S.C. § 1347; and Weir and Donaldson with conspiring to defraud the United States and violate the Anti-Kickback Statute, in violation of 18 U.S.C. § 371.

Prior to trial, the government provided notice under Federal Rule of Evidence 404(b)(3) to defendants with certain evidence it intended to introduce at trial. Relevant here, that evidence

No. 24-5335, *United States v. Weir et al.*

included Donaldson's 2013 federal convictions for illegal distribution of opioids and consequential loss of his pharmacy license, Donaldson's 2017 state conviction for illegal possession of opioids and consequential revocation of his federal supervised release, and Spivey's 2014 complaint to the Board of Pharmacy against Dale Hollow.

Donaldson contested the admissibility of this evidence in motions in limine, which the district court granted at a pretrial conference. For both Donaldson's prior federal and state convictions, the district court based its exclusionary ruling on Rule 404(b). Specifically, it determined that Donaldson's prior convictions had "nothing to do with the scheme and allegations in this case" and therefore did not qualify for any of Rule 404(b)(2)'s permitted uses. Further, the district court excluded Spivey's complaint about Dale Hollow and Donaldson under Rule 403, noting that "[t]here is no way to unring the bell about [the alleged bad acts in the complaint] by Donaldson."

The government then timely filed a notice of interlocutory appeal challenging the district court's exclusion of these three pieces of evidence, effectively pausing the proceedings in district court.

II.

Before turning to the merits, we must establish the existence of our jurisdiction over this interlocutory appeal. *Lindke v. Tomlinson*, 31 F.4th 487, 494 (6th Cir. 2022) ("[W]e have an independent obligation in every case to ensure that subject-matter jurisdiction exists."). We normally view interlocutory appeals with disfavor. *See, e.g.*, *United States v. MacDonald*, 435 U.S. 850, 853–54 (1978). But Congress has authorized our jurisdiction in this instance: Under 18 U.S.C. § 3731, the government may seek interlocutory appeal from an "order of a district court . . . excluding evidence . . . if the United States attorney certifies to the district court that the

No. 24-5335, *United States v. Weir et al.*

appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." Because the government complied with this statutory mandate, we have jurisdiction to review this appeal.

III.

We review evidentiary rulings, including a district court's exclusion of evidence, for an abuse of discretion. *United States v. Luck*, 852 F.3d 615, 624 (6th Cir. 2017). "An abuse of discretion occurs when a district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Cleveland*, 907 F.3d 423, 436 (6th Cir. 2018). Under this standard, we should reverse only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached." *Id.* As explained next, the district court abused its discretion in excluding evidence of and related to Donaldson's state conviction, but it did not do so in excluding Donaldson's federal conviction and Spivey's complaint.[2]

A.

The government first argues that the district court erroneously excluded, under Rule 404(b), evidence related to Donaldson's 2013 federal convictions for five counts of distributing hydrocodone. Rule 404(b)(1) prohibits the use of evidence of other crimes, wrongs, or acts to prove that a person acted in accordance with a particular character trait on a particular occasion. Such evidence is however admissible to prove motive, opportunity, intent, preparation, plan,

---

[2]Although we have sometimes reviewed de novo "the legal determination that [alleged prior bad] acts were admissible for a permissible 404(b) purpose," *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012), rather than for an abuse of discretion, *see United States v. Johnson*, 24 F.4th 590, 605 (6th Cir. 2022) (acknowledging our split precedent on this issue), we need not resolve this intra-circuit split here because the government contends that the more deferential abuse-of-discretion standard is appropriate.

-6-

No. 24-5335, *United States v. Weir et al.*

knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). When determining the admissibility of alleged prior-bad-act evidence, we consult a three-step test: whether (1) the act actually occurred, (2) the evidence is offered for a permissible purpose, and (3) the evidence's probative value is not substantially outweighed by unfair prejudice. *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015).

Donaldson concedes his prior federal drug-distribution convictions actually occurred, so we begin with whether the government offered these convictions for a permissible purpose. The government planned on offering this evidence to prove Weir's and Donaldson's knowledge of, and intent to enter into, the conspiracy to distribute controlled substances. Although "prior drug-distribution evidence is admissible under Rule 404(b) to show intent to distribute," *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) (brackets and citation omitted), that evidence "must be sufficiently probative," *United States v. Cordero*, 973 F.3d 603, 621 (6th Cir. 2020); *see also Probative Value*, Black's Law Dictionary (12th ed. 2024) ("The degree to which one fact tends to make probable another posited fact."). To be probative of intent to possess and distribute, the prior drug-distribution evidence must be (1) "substantially similar" and (2) "reasonably near in time to the specific intent offense at issue." *Cordero*, 973 F.3d at 621 (citation omitted). Prior distributions are likely "substantially similar" to the present conduct if they "were part of the same scheme or involved a similar *modus operandi* as the present offense," *United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008), or involved the same co-conspirators, *Cordero*, 973 F.3d at 622. And although there is no bright-line rule with respect to how close in time a prior offense must be to the instant one to be reasonably near in time, *United States v. Thompson*, 690 F. App'x 302, 308 (6th Cir. 2017), the further in the past such an offense occurred, the less probative it is, *compare United States v. Ayoub*, 498 F.3d 532, 535–36, 547–48 (6th Cir. 2007) (affirming the admission of

No. 24-5335, *United States v. Weir et al.*

four-year-old prior drug-distribution evidence), *with Bell*, 516 F.3d at 438, 444 (ruling that five-to-seven-year-old prior convictions were too "unconnected to the present charge" to be probative).

The district court did not abuse its discretion in concluding that the government did not offer Donaldson's 2013 federal convictions for a permissible purpose. The conduct underlying those convictions differs significantly from, and occurred several years earlier than, the conduct underlying the conspiracy at issue here and therefore is not probative of defendants' intent and knowledge. With respect to temporal proximity, all of Donaldson's prior distributions occurred in 2010—four years before the 2014–2019 conspiracy here began. As for similarity between the offenses, Donaldson's conduct there differed from his alleged conduct in the instant conspiracy. Donaldson's prior conduct involved distributing unprescribed medication (to just one patient), while his alleged conduct here involved facilitating the filling of unnecessary prescription medication (to several patients). And while Donaldson acted alone in 2010, he was a part of a four-defendant sophisticated conspiracy here. Finally, Donaldson owned the pharmacy in 2010 and received no kickbacks from his prior conduct, unlike the later conspiracy where he did not own the pharmacy and allegedly received kickbacks (in cash and pills) for his patient-recruitment efforts. Although one drug (hydrocodone) and the pharmacy itself are common between Donaldson's prior and present conduct, "the convictions . . . for offenses that occurred several years previously [that] were not alleged to be part of the same scheme to distribute drugs [n]or to involve a similar *modus operandi*" are not probative of defendants' present intent and knowledge. *See id.* at 444.

Nor did the district court abuse its discretion in concluding that, even if offered for a permissible purpose, the danger of unfair prejudice from admitting Donaldson's federal convictions and consequential loss of his pharmacy license substantially outweighs this evidence's

No. 24-5335, *United States v. Weir et al.*

probative value. The probative value of alleged Rule 404(b) evidence often turns on its substantial similarity to the present conduct at issue. *See United States v. Haywood*, 280 F.3d 715, 721–22 (6th Cir. 2002). And while evidence is "not unfairly prejudicial when it only damages the defendant's case due to the legitimate probative force of the evidence," it is "unfairly prejudicial when it tends to suggest decision on an improper basis. *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016) (internal quotation marks omitted). Such an improper basis includes "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged." *Bell*, 516 F.3d at 445 (internal quotation marks omitted). After the court determines probative value and prejudicial effect, it engages in a "highly discretionary" balancing test. *Id.*

The balancing test here substantially tips toward unfair prejudice. Given the dissimilarities between Donaldson's prior and present conduct, this prior-bad-act evidence appears to show little more than a propensity to deal drugs—"once a drug dealer, always a drug dealer—which 404(b) excludes." *Id.* at 444. The absence of substantial similarity (and lack of temporal proximity) between the past and instant conduct is fatal to the prior convictions' probative value. *See Haywood*, 280 F.3d at 721–22. Because the government would proffer the prior federal convictions to show prior bad character, this evidence "tends to suggest decision on an improper basis" and is therefore "unfairly prejudicial." *See Houston*, 813 F.3d at 291; *accord Bell*, 516 F.3d at 445. Thus, the district court's determination that the danger of unfair prejudice from this evidence substantially outweighs its probative value was not an abuse of discretion.

No. 24-5335, *United States v. Weir et al.*

For these reasons, the district court did not abuse its discretion in excluding, under Rule 404(b)(1), evidence of Donaldson's prior federal convictions and resulting loss of his pharmacy license.[3]

B.

The government also takes issue with the district court's exclusion of Donaldson's 2017 state conviction—which arose out of his ransacking of Dale Hollow pharmacy and possession of a patient's prescription pills—under Rule 404(b). That Rule's general exclusion of other bad acts does not apply to intrinsic evidence because "[i]ntrinsic acts are those that are . . . a part of the criminal activity[,] as opposed to extrinsic acts, which are those that occurred at different times under different circumstances from the offense charged." *United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022) (second and third alterations in original) (citation omitted). In other words, intrinsic acts are typically "part of a single criminal episode," so they are not an extrinsic "other crime, wrong, or act" that Rule 404(b) generally excludes. *Id.* (citation omitted). One type of intrinsic evidence is res gestae evidence, which is evidence that "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Sumlin*, 956 F.3d 879, 889–90 (6th Cir. 2020). Because res gestae evidence "consists of those other acts that are inextricably intertwined with the charged offense," it also is not subject to Rule 404(b). *Sadler*, 24 F.4th at 554 (citation omitted).

---

[3]Donaldson eventually commenced supervised release for these offenses, during which he committed his 2017 state possession offense. That state conviction then caused the revocation of his federal supervised release. Because the district court properly excluded Donaldson's federal convictions, it also properly excluded the fact that his supervised release for these convictions was eventually revoked.

No. 24-5335, *United States v. Weir et al.*

Here, the district court excluded evidence related to Donaldson's 2017 state conviction under Rule 404(b), effectively holding that this evidence is not intrinsic to the instant conspiracy. We disagree. The state conviction and underlying conduct are intrinsic to the overall prescription-medication-distribution conspiracy, and the district court's conclusion to the contrary reflects an abuse of discretion.

Most notably, the state conviction was not a prior bad act because Donaldson was convicted during the instant conspiracy. *See Sumlin*, 956 F.3d at 889 (explaining that intrinsic acts "are part of a single criminal episode," while extrinsic acts occur "at different times" from the charged offense (citation omitted)); *see also United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012) (explaining that some intrinsic evidence has a "temporal proximity, causal relationship, or spatial connection[]" to the charged offense (citation omitted)). Donaldson's ransacking and possession of the patient's prescription pills occurred in November 2016, and he pleaded guilty in February 2017—in the midst of the 2014–2019 conspiracy.

And this conduct does not just have a temporal relationship with the charged conspiracy—it was a direct result of the conspiracy. The government alleges that Weir paid Donaldson to recruit patients to the pharmacy, but when Weir withheld payment, Donaldson ransacked the pharmacy in retaliation. When law enforcement responded to the scene, Donaldson had a pharmacy patient's prescription oxycodone in his pocket, which aligns with the government's theory that some of Dale Hollow's patients paid Donaldson in pills for his role in the conspiracy. Finally, Donaldson's intervening state conviction "completes the story" of why Weir eventually moved Donaldson to the warehouse and stopped reporting him as an employee in the later part of the conspiracy. *See Sumlin*, 956 F.3d at 890 (citation omitted). Following this state conviction, Weir had to make "an effort to conceal Donaldson's role at Dale Hollow" to attract less attention from the state and

-11-

No. 24-5335, *United States v. Weir et al.*

federal regulatory agencies that were investigating the pharmacy.  For these reasons, this intrinsic evidence encompasses acts that are part of the overall conspiracy and is therefore not barred by Rule 404(b).

Defendants disagree that this evidence is intrinsic, arguing that it was not intertwined with Donaldson's role in the conspiracy.  They note that Donaldson's role was to recruit and chauffeur patients to and from Dale Hollow, so the fact that he "had his roommate's pills in his pocket, at a time he threw a temper tantrum and vandalized Weir's pharmacy, has no logical connection to the Government's allegations."  But defendants ignore that, for these services, Weir was allegedly paying Donaldson until he decided to withhold such payment (which explains why Donaldson vandalized the pharmacy) and that Donaldson was allegedly accepting payment from patients in prescription pills (which explains why he had the pills in his pocket).

Accordingly, Donaldson's possession of the patient's pills, ransacking of the pharmacy (which the district court already ruled admissible), and state conviction for this conduct are all intrinsic evidence that "are part of a single criminal episode."  *See Sadler*, 24 F.4th at 554 (citation omitted).  This evidence is therefore not subject to exclusion under Rule 404(b), and the district court abused its discretion in reaching a contrary conclusion.

Though this intrinsic evidence is not subject to Rule 404(b)'s three-step test, we still must confirm that it is relevant under Rule 401 and passes Rule 403's balancing test.  *See United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015).  The evidence related to Donaldson's state conviction passes these requirements.  For relevance, this evidence will corroborate anticipated testimony from Dale Hollow patients about paying Donaldson in pills in exchange for his role in the conspiracy, which will show his knowing and voluntary entry into the conspiracy—an element of the offense under 21 U.S.C. § 846.  *See* Fed. R. Evid. 401; *United States v. Hazelwood*, 979 F.3d

No. 24-5335, *United States v. Weir et al.*

398, 409 (6th Cir. 2020) ("In a criminal case, a fact is 'of consequence' if it makes it more or less likely that the defendant committed the charged conduct."); *see also United States v. Mosley*, 53 F.4th 947, 956 (6th Cir. 2022) (noting that the elements of conspiring to distribute drugs under § 846 are that (1) two or more individuals agreed to violate a drug law and (2) the defendant knowingly and voluntarily entered into the agreement). And the fact that Weir allowed Donaldson to continue at the pharmacy following this state conviction also suggests Weir's knowing and voluntary entry and participation in the conspiracy. Therefore, Rule 401 does not bar admission of Donaldson's state conviction.

As for Rule 403, the danger of unfair prejudice from the admission of this evidence does not substantially outweigh its probative value. *See Churn*, 800 F.3d at 779. Though this evidence is undoubtedly prejudicial to Donaldson, all "evidence offered against a defendant is to some extent prejudicial"; what matters under Rule 403 is whether that prejudice is "unfair" by "suggest[ing] a decision on an improper basis." *United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999). The risk of unfair prejudice is minimal here, where the evidence is directly probative of Donaldson's voluntary entry into, and his ongoing role in, the drug conspiracy. And this direct evidence helps tell the story of Donaldson's and Weir's relationship to the overarching conspiracy. Thus, Rule 403 also does not bar admission of this evidence. *See United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (explaining that the Rule 403 balancing test "is strongly weighted toward admission").

Accordingly, the district court abused its discretion when it excluded, under Rule 404(b), intrinsic evidence of Donaldson's state conviction for illegal possession of opioids.

No. 24-5335, *United States v. Weir et al.*

C.

Finally, the government appeals the district court's exclusion of the complaint that Spivey filed with the Tennessee Board of Pharmacy in 2014, which alleged too-frequent filling of prescriptions by Donaldson and Dale Hollow. The district court excluded this evidence under Rule 403, finding that the danger of unfair prejudice substantially outweighs the probative value.

That ruling was not an abuse of discretion. Spivey's complaint alleged unprofessional prescribing conduct different than what the government alleges here. In her complaint, she contended that Dale Hollow was filling prescriptions too early and failing to meet its controlled-substances-reporting requirements. She also complained that Donaldson may have been practicing pharmacy despite the revocation of his license. But the government's theory in this case is that Weir and Donaldson were recruiting patients with prescription-abuse issues, easing their obtainment of medically unnecessary prescription medication, and filling such medication at Dale Hollow. Perhaps recognizing this discrepancy, the district court noted that, if Spivey's complaint were admitted, there would be "no way to unring the bell about these bad acts by Donaldson." We agree: Donaldson's bad acts alleged in Spivey's complaint (too-frequent filling and unlicensed practice) are inapposite to the conduct that the government alleges now, and a jury may be inclined to convict based on such acts rather than the conduct at issue. The risk of a decision on that improper basis leans the Rule 403 scale toward unfair prejudice. *See Houston*, 813 F.3d at 291.

And the complaint appears untrustworthy due to its potential inclusion of hearsay. The complaint states that Spivey was "told by different people" that Donaldson may have been performing pharmacist duties and that she knew of several instances where Dale Hollow filled certain patients' medications too early. While Spivey's statements themselves are not hearsay and are admissible if offered by the government, *see* Fed. R. Evid. 801(d)(2)(A), her statements about

No. 24-5335, *United States v. Weir et al.*

other people's statements may constitute inadmissible hearsay if offered for the truth of the matter asserted, *see* Fed. R. Evid. 801(c), 802, 805. A jury's potential to convict based on improper hearsay contained in this complaint firmly tips the Rule 403 scale toward unfair prejudice. *Cf. Rousey v. United States*, 115 F.3d 394, 398–99 n.4–5 (6th Cir. 1997) (explaining that inadmissible hearsay statements in an affidavit that were "untrustworthy" and prejudicial "would be properly subject to exclusion" under Rule 403); *United States v. Forrester*, 60 F.3d 52, 59–61, 65 (2d Cir. 1995) (requiring a new trial where the district court admitted unfairly prejudicial hearsay statements).

The government disagrees, contending that the complaint is indicative of Spivey's knowledge of and intent to join the conspiracy. It argues that the complaint shows that Spivey "reverse[d] course" by willingly joining the conspiracy despite knowing of, and complaining about, Dale Hollow's prescribing practices. But Spivey filed her complaint in July 2014, 15 months before she sold her share in Xpress and allegedly joined the conspiracy. That stale complaint—alleging conduct different from what is presently at issue—is not probative of her knowledge and voluntariness at the time she joined the conspiracy. *Cf. United States v. Sliwo*, 620 F.3d 630, 635 (6th Cir. 2010) ("[C]harges of conspiracy are not to be made out by piling inference upon inference." (citation omitted)).

As such, the district court did not abuse its discretion by concluding that the danger of unfair prejudice from Spivey's complaint substantially outweighs its probative value and is therefore inadmissible under Rule 403.

D.

Given the nature of this interlocutory appeal, we recognize that our review of the district court's exclusionary rulings, based on the current record, may be subject to change depending on

No. 24-5335, *United States v. Weir et al.*

how trial proceeds and what additional evidence is admitted. Accordingly, the district court may, in its discretion, revisit the admissibility of the excluded evidence at issue in this appeal as necessary.

## IV.

For these reasons, we affirm the district court's exclusion of Donaldson's 2013 federal convictions and underlying conduct, subsequent loss of his pharmacy license, eventual revocation of his federal supervised release, and Spivey's 2014 complaint to the Tennessee Board of Pharmacy, and we reverse the district court's exclusion of Donaldson's 2017 state conviction and underlying conduct. We remand for further proceedings consistent with this opinion.